# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

DIANA BAJANDAS

Plaintiff,

v.

CUPEYVILLE, INC

Defendant

CIVIL NO.

RE: ADAAA/
Puerto Rico Law 44

Plaintiff demands trial by jury

## COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW,** the plaintiff through the undersigned attorney, and very respectfully states, alleges and prays:

### I. NATURE OF THE ACTION

This is an action for money damages, injunctive and declaratory relief brought by Plaintiff Diana Bajandas (hereinafter referred to as "Bajandas" or "Plaintiff") against her former employer Cupeyville, Inc. (hereinafter referred to as "Cupeyville"). Bajandas brings this action to remedy the deprivation of rights secured under the laws of the United States and laws of Puerto Rico. On May 17th, 2013 Bajandas was terminated from her employment at Cupeyville after six (6) years of employment as elementary school counselor. Consequently, Bajandas requests this Court for compensation for his sufferings, as well as for equitable and declaratory relief from this Court and all other remedies provided by applicable statutes. Jury trial is demanded.

### II.  JURISDICTION

This Honorable Court has jurisdiction over this civil action pursuant to the American with Disabilities Act of 1990 (ADA), 42 USC Section 12101, et. seq., as amended by the ADA Amended Act of 2008 Pub. L. No. 110-325, 122 Stat. 3553 (2008). The supplemental jurisdiction of this Honorable Court under 28 USC Section 1367 is also invoked to entertain claims by Bajandas under

Puerto Rico Law 44, 1 L.P.R.A. Section 501, et seq., The proper venue lies in this district upon 28 USC 1331 and 1367.  Notwithstanding, there is also diversity jurisdiction with regards to Bajandas Puerto Rico Law 44 cause of action in as much as Bajanda and Cupeyville, at the time of the filing of the present Complaint are citizens of different states  and the damages requested in the present Complaint exceed $75,000.00.

Plaintiff timely filed a charge before the Equal Employment Opportunity Commission.   On September 30, 2013 the EEOC issue the right to sue letter in the above mentioned charges, which was received by Bajandas on October 10, 2013. Consequently, Plaintiff is filing the present Complaint within the ninety (90) day period required by law.

## III. PARTIES

1.      Bajandas is a citizen of Florida, USA.

2.      Bajandas began working for Cupeyville as an elementary school counselor on August 2006.

3.      Cupeyville is a domestic corporation incorporated in the Commonwealth of Puerto Rico with its principal place of business in the Island.

4.       Cupeyville had more than 500 employees during any work week from January 1, 2012 until today.

5.      Cupeyville is an employer under the ADAAA and under Puerto Rico law 44, 115 and Law 80.

## IV. FACTS

2

6.     Bajandas began working as an Elementary Counselor in Cupeyville since the year 2006 and as such was part of the school Administration.

7.     Bajandas was terminated from her employment at Cupeyville on May 17th, 2013.

8.     Mrs. Ana Pagán, Bajandas direct supervisor, informed her that the alleged reasons behind my employment termination were allegedly Bajandas absences and because her position as a Counselor required to always be physically present at school in case of emergencies.

9.     The above stated reasons are patently false and constitute a pretext for discrimination against Bajandas.

10.    First and foremost, her job description did not require Bajandas to be physically present at school at all times.  Furthermore, all of Bajandas absences where notified and justified under the laws.

11.    During 2011-2012 school year, Bajanda became very sick. She began psychiatric treatment that resulted in a diagnosis of Bipolar Disorder.  While Bajandas physician was trying out different medications and dosages to get to the one that suited Bajandas Bipolar Disorder, a lot of them had strong reactions in Bajandas conduct and nervous system to the point that she had an MRI done to rule out an ischemic attack and also caused her to dissociated and had somatoform consequences. Cupeyville was aware of the above.

12.     During the months of November and December of 2011, Bajandas had a complication with an asthma attack in which she suffered syncope caused by the extreme coughing attacks. Every time Bajandas had a coughing attack she would have convulsions and fainted. In addition, the capillaries of her eye balls and eye lids exploded having the effect of making her eyes black and deformed because of the blood. The healing of the eyes took approximately three (3) weeks.

13.     All of Bajandas superiors, and various co-workers, including Ms. Peña were aware of the above medical conditions suffered by Bajandas. Bajandas even fainted while working but thanks to two co-workers she did not hit the floor. Ms. Pagan was notified of this incident.

14.     Bajanda tried to explain Mrs. Pagan the reasons for her diseases and the recommendations from the doctors. Ms. Pagan answered that she was sorry but that Bajandas had to go to work like that. In two occasions Bajanda went to the school to hand out doctor's excuses and while driving had coughing attacks causing her to faint and hit a car on one occasion and in another occasion hit a wall.

15.     Cupeyville was well aware of Bajandas physical and emotional conditions as well as the history of her treatment.

16.     Bajandas asthma attacks required careful treatment because the extreme consequences they had upon her well being. Bajandas even took her mask and medications to school and went to the infirmary to take her asthma therapies.

4

Consequently, Cupeyville was aware of Bajandas asthma condition and the treatment she was receiving for said condition.

17.      On the 2011-2012 school year Mrs. Pagán gave Bajandas a disciplinary memo stating that she was worried because of Bajandas absences and because she had not completed her doctorate degree in Clinical Psychology.

18.      Bajandas promised Mrs. Pagán that she was going to work on the completion of her doctorate degree and they agreed that Bajandas was going to finish her dissertation and get her Puerto Rico license to practice psychology in the Island.

19.      The same day that they gave Bajandas the above mentioned memo, she was satisfactorily evaluated in her performance at the school by Dr. Joycette Aponte.

20.      When the school year 2012-2013 began, Bajandas was stressed and anxious because she had to meet the agreements she had reached with Mrs. Pagan to obtain her doctoral degree, plus she felt uncomfortable at work as a result of Mrs. Pagan's pressures upon her.

21.      At that point in time Bajanda was am alone in Puerto Rico, with no family as a support, so she had to deal with her medical conditions and treatment all alone.

22.      Bajandas anxiety attacks lead her to take Klonopin on a daily basis.

23.      During the 2012-2013 school year Bajandas car broke down causing her to take one day from work to take her car from where it  broke down in a tow car to the mechanic.  After that Bajandas went to work everyday in taxi for almost three (3)

weeks and came back to her house because a co-worker offered to take her home. Mrs. Pagán had knowledge of Bajandas transportation situation.

24.     At some point in time during the year 2013 Bajanda spoke to Mrs. Mariana Pagan, Elementary Principal and daughter of Mrs. Ana Pagán, to take 5 days to prepare for herself for her doctoral dissertation (as promised in the memo given in the school year 2011-2012) and she agreed and approved the same..

25.     Notwithstanding the above, Bajanda was forced to leave her psychiatrist because she felt that the medication he was giving her was doing more damage than helping her with the disorder.  Bajandas found another psychiatrist, so the process of looking for the correct medications and dosages began again.  While this was taking place, Bajandas suffered, and still suffers anxiety attacks, mood changes between depression and manic conduct, which obviously affects every aspect of her life. Sometimes Bajanda called the school because two or three days passed without her sleeping and she was exhausted.  Another time Bajanda was absent four (4) days because of a severe depression, which left her in bed without energy, crying spells, not taking baths and simply not wanting to talk or interact with anyone.

26.     As a result of Ms. Pagan's bad reaction during the previous school year when she tried to explain to her the reasons behind her absences and why she fainted at school, she felt threaten to discuss her specific situation with Ms. Pagan, although the school was aware of her condition.   Bajanda did not know what to do. Notwithstanding, Bajanda explained to Mrs. Pagan how she felt and the symptoms she was

6

experiencing and that she felt depressed every time she called in order to notify that she was going to be absent from work

27.     Notwithstanding the above Cupeyville fired Mrs. Bajanda in violation of the ADAAA and Puerto Rico Law 44.

28.     The result of being unemployed since May 17, 2013 was that Bajandas Bipolar Disorder got worst.  Now the episodes are of Severe Depression.  The anxiety is without control and also her Bulimia.  Bajanda is afraid to work again; She Cupeyvilleies every day and began cutting her arms.  Bajandas have no medical insurance or money to pay doctors, evaluations and less the medications.

29.     Another consequence of being unemployed and with a debilitated mental health is that she could not study for my Puerto Rico license to practice as a Clinical Psychologist.  The reason of this being lack of concentration, depression, not wanting to do anything and having no money for the reviews that the JPPR offer to take the boards.

30.     Bajandas whole life changed in one day, to the point that she had to leave Puerto Rico and live with her parents in Jacksonville, Florida because she has to be under constant supervision for the risk of Bajandas harming herself.

31.     Prior to Bajandas termination not even once in the school year she was called to discuss what was happening to her and/or to take disciplinary measures against her.

32.     Bajandas was discriminated against by Cupeyville because of her physical and pshychiatric conditions described above, because of the history of the treatment

received by those conditions.  The failure by Cupeyville of providing Bajandas with the leaves from employment necessary for my condition to improve as a reasonable accommodation.

## FIRST CAUSE OF ACTION
## ADAAA RECORD OF DISABLTY AND DISABILITY
## DISCUPEYVILLEIMINATION IN EMPLOYMENT TERMINATION

33.     Plaintiffs reiterate the allegations included in paragraphs 1-32 of this complaint.

34.     The ADAAA does not explicitly change the "record of" prong of the disability definition.

35.     The EEOC Regulations continues to define a person with a "record of" disability as an "individual [who] has a history of, or has been misclassified as having, a mental of physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1), 74 Fed. Reg. at 48443.

36.     The Regulations state, however, that whether an individual has a "record of" disability "shall be construed broadly to the maximum extent permitted by the ADA and should not demand extensive analysis." 29 C.F.R. § 1630.2(k)(2), 74 Fed. Reg. at 48443.

37.     Some examples of "record of" disabilities include a person with a past diagnosis of prostate cancer who, after treatment, is told that he "no longer has cancer," 29 C.F.R. § 1630.2(k)(1)(i), 74 Fed. Reg. at 48443, and a person who was misdiagnosed in the past with bipolar disorder and hospitalized because of what was in actuality a temporary reaction to medication. 29 C.F.R. § 1630.2(k)(1)(ii), 74 Fed. Reg. at 48443.

38.    The EEOC also confirms in the Regulations that "coverage under the 'record of'

       prong … does not depend on whether an employer relied on a record (e.g., medical,

       vocational, or other records that list the person as having a disability) in making an

       employment decision.

39.    An employer's knowledge of an individual's past substantially limiting impairment

       relates to whether the employer engaged in discrimination, not to whether an

       individual is covered." EEOC Q&A, *supra*, Question 19.

40.    The EEOC Regulations also clarify that a "record of" disability will support a failure-

       to-accommodate claim. 29 C.F.R. § 1630.2(o)(4), 74 Fed. Reg. at 48443; 29 C.F.R. §

       1630.9(e), 74 Fed. Reg. at 48444; 29 C.F.R. Part 1630 App., §§ 1630.2(o) and

       1630.9(e), 74 Fed. Reg. at 48449.

41.    Bajandas was arbitrarily and discriminatorily harassed, disciplined and subject to a

       hostile environment of work not only because of her record of a disability, but also

       because of his disability under the law which significantly affected her ability to,

       think, concentrate and sleep. Consequently, was discriminatorily terminated from her

       employment at Cupeyville.

## SECOND CAUSE OF ACTION
## ADAAA FAILURE TO ACCOMMODATE

42.    Plaintiffs reiterate the allegations included in paragraphs 1-41 of this complaint.

43.    CUPEYVILLE failed to consider Bajandas's accommodation needs.

44.     Under the ADAAA *"qualified* individual with a disability" is defined as, "an

       individual with a disability who, with or without reasonable accommodation, can

       perform the essential functions of the employment position that such individual holds

or desires." 42 U.S.C. §12111 (8). Under the ADAAA the analysis as to the qualification of a person for a position is a two-step inquiry. The court first must examine whether the individual satisfies the "requisite skill, experience, education and other job-related requirements" of the position. The court then considers whether the individual "can perform the essential functions of such position" with or without a reasonable accommodation. 29 C.F.R. § 1630.2(m) and 42 U.S.C. § 12111(8).

45.     Furthermore, under the ADAAA the term disability is now to be broadly interpreted. The Rules of Construction require that the definition of disability "shall be construed . . . in favor of broad coverage of individuals … to the maximum extent permitted by the terms of this Act." 42 U.S.C. § 12102(4)(A). The EEOC Regulations are consistent with the Act. 29 C.F.R. § 1630.1(c)(4), 74 Fed. Reg. at 48439; 29 C.F.R. Part 1630 App., Introduction, 74 Fed. Reg. at 48444. *See also Rohr v. Salt River Project Agricultural Improvement and Power District*, 555 F.3d 850, 861 (9th Cir. 2009) ("Beginning in January 2009, "disability" is to be broadly construed and coverage will apply to the "maximum extent" permitted by the ADA and the ADAAA."); *Verhoff v. Time Warner Cable, Inc.*, 299 Fed. Appx. 488, 494 (2008) (unpublished); *Fournier v. Payco Foods Corp.*, 611 F. Supp. 2d 120, 129 n.9 (D.P.R. 2009) ("The overarching purpose of the act is to reinstate the 'broad scope of protection' available under the ADA."); *Kingston v. Ford Meter Box Co., Inc.*, 2009 WL 981333, at *4 n.4 (N.D. Ind. Apr. 10, 2009) (similar).

46.     Bajandas has been receiving treatment by psychiatrists who have diagnosed Bajandas with Severe Recurrent Major Depression and Bipolar Disorder with psychotic features and post-traumatic stress disorder.  Bajandas's disability substantially limited

10

his capacity to sleep, concentrate and to think. Consequently, Bajandas is clearly a qualified individual with a disability under the ADAAA.

47.    Under the ADAAA the primary subject "should be whether [covered entities] have complied with their obligations, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." Pub. L. 110–325, § 2(b)(5), 122 Stat. 3553 (Sep. 25, 2008), set out in the Note to 42 U.S.C. § 12101. CUPEYVILLE's denial and/or constant changes and reproaching of Plaintiff's reasonable accommodation is a violation of the ADAAA and a gross failure to comply with its obligations under the Act.

### THIRD CAUSE OF ACTION
### LAW 44 FAILURE TO ACCOMMODATE
### AND DISCUPEYVILLEIMINATION CLAIM

48.    Plaintiffs reiterate the allegations included in paragraphs 1-47 of this complaint.

49.    It is Bajandas's contention that Defendant failure to accommodate Plaintiff and Cupeyville discriminatory treatment is also in violation under Puerto Rico Act 44.

50.    Bajandas has suffered emotional damages, mental anguish and moral damages as a result of Defendant discriminatory employment termination and its failure to accommodate Plaintiff.

51.    Bajandas's emotional and economic damages are calculated in an amount not less than $1,000,000.00 which must be double as required by the statute.

52.    Defendants' actions are a violation to Puerto Rico Law 44.

### FOURTH CAUSE OF ACTION
### CONSTRUCTIVE DISCHARGE CAUSED BY
### CUPEYVILLE DISCUPEYVILLEIMINATORY, HARRASSING AND ILLEGAL
### CONDUCT

11

**TOWARD BAJANDAS**

53.     Plaintiffs reiterate the allegations included in paragraphs 1- 52 of this complaint.

54.      Bajandas employment termination was in violation of Puerto Rico Law 80.

55.     Bajandas is entitled to her severance pay under Puerto Rico Law 80 of Unjust Dismissal.

**REMEDIES**

Plaintiffs most respectfully pray that this Honorable Court, after a jury trial, enter judgment against the defendants and that it:

a.   Award Bajandas compensatory damages for his emotional and moral damages and his mental anguish.

b.   Severance pay under Puerto Rico Law 80.

c.   Award Bajandas for economic damages in loss of earnings, back pay, front pay and other economic damages suffered by him.

d.   Award Bajandas punitive damages.

e.   Award Bajandas back and front pay as applicable as well as all benefits he has lost as a result of CUPEYVILLE discriminatory treatment.

f.   Award plaintiffs the costs of this action, including reasonable attorney=s fees, costs, and expenses.

g.   Award pre and post judgment interests.

h.   Grant Plaintiffs any such further relief as this Honorable Court may deem just, proper and equitable.

i.   Trial by jury is demanded.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 8th day of January, 2014.

**Frontera Suau Law Offices, PSC**
239 Alterial Hostos Avenue
San Juan, Puerto Rico 00936-4225
Telephone: (787) 250-1420
Fax: (787) 763-3286

By: **s/ Juan Manuel Frontera-Suau**
Juan Manuel Frontera-Suau
USDC-PR No. 214905
fronterasuau@yahoo.com

**s/ Kenneth Colón**
Kenneth Colón
USDC-PR No. 202813
Kenneth.colon@icepr.com